**RICK et al. v. FARRELL et al.　(No. 9152.)**

(Court of Civil Appeals of Texas. Dallas. Oct. 18, 1924. Rehearing Denied Dec. 6, 1924.)

**1. Parties ⬅88(1)—Misjoinder of parties plaintiff waived by answer.**

Where several plaintiffs joined in action for rescission of separate stock sales, defendants' general demurrer and general denial waived misjoinder of parties plaintiff.

**2. Pleading ⬅249(3)—Action for rescission of purchase may be amended into action for fraud based on affirmance of contract.**

Where plaintiff's action for rescission of purchase of stock was not prosecuted to judgment and he had obtained no advantage thereby, he did not waive fraud so as to preclude amendment into action for actual and exemplary damages for fraud based upon affirmance of contract under Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a–3973c.

**3. Election of remedies ⬅3(1)—Where remedies are alternative and concurrent, there is no election until final judgment.**

Where remedies are not inconsistent but are alternative and concurrent, there is no election until one has been prosecuted to judgment, unless plaintiff has gained advantage or defendant suffered disadvantage.

**4. Election of remedies ⬅7(1)—Though remedies inconsistent, there is no election until final judgment.**

Mere commencement of action is not election, though remedies are inconsistent, but party may dismiss one at any time before final judgment and proceed upon other remedy.

**5. Election of remedies ⬅3(2)—Commencement of action for damages for fraud ratifies contract and precludes action for rescission.**

Notwithstanding rule that there is no election of remedy until final judgment, commencement of action for damages for fraud under statute of frauds (Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a–3973c) ratifies contract and precludes action for rescission thereof.

**6. Pleading ⬅64(2)—Where prayer of petition indicated which of two actions was relied upon, additional general prayer did not cause petition to state two causes.**

Where petition set out facts on which either rescission of contract or action for damages for fraud could be predicated and prayer showed action to be for fraud, additional prayer for "for such other relief in law and in equity," etc., did not render petition objectionable as stating two inconsistent actions.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(266 S.W.)

**7. Appeal and error ⟨⟩1040(16)—That petition stated two causes of action not available to defendants on appeal record showing election by plaintiff.**

Objection that petition stated two inconsistent causes of action is of no avail to defendants on appeal, where record shows that on their pleas of election plaintiff elected one and abandoned other.

**8. Trial ⟨⟩350(3)—In submitting special issues, court need not submit issue of what fact was misrepresented.**

In action for damages for fraud in sale of corporate stock, where court's charge reflected definition of actionable fraud in Vernon's Ann. Civ. St. Supp. 1922, art. 3973a, under which action was brought, it was not necessary in submitting special issues to jury to submit issue of what fact was falsely represented.

**9. Trial ⟨⟩350(3)—In submitting special issues court need not submit issue as to whether buyer believed false representations of seller.**

In submitting special issues to jury in action for damages for fraud in sale of corporate stock, court need not submit issue as to whether buyer believed false representations; that element being covered in definition of actionable fraud in Vernon's Ann. Civ. St. Supp. 1922, art. 3973a, which was incorporated into instructions.

**10. Fraud ⟨⟩13(2)—Buyer need not prove sellers knew representations to be false.**

In action for damages for fraud, buyer need not establish that sellers knew they were making false representations, but need only establish that he believed and relied upon representations and that they were false.

**11. Trial ⟨⟩241, 352(1)—Special issues and court's charge being reproduction of statutory definition of actionable fraud held proper.**

Special issues and court's charge in exact duplication of definition of actionable fraud in Vernon's Ann. Civ. St. Supp. 1922, art. 3973a, were proper.

**12. Fraud ⟨⟩54—Evidence of similar fraudulent transactions admissible to show intent.**

In action for damages for fraud in sale of corporate stock, evidence of similar transactions, all of which took place within week, *held* admissible to show intent.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by P. A. Torti, C. E. Farrell, and others against A. C. Rick and another. Judgment for plaintiff P. A. Torti, and defendants appeal. Affirmed.

Muse & Muse, of Dallas, for appellants.
John T. Gano, of Dallas, for appellee.

VAUGHAN, J. Appellee P. A. Torti, C. E. Farrell, H. B. Northcutt, J. C. Aldridge, and F. A. Ellis, as coplaintiffs, filed this suit on September 14, 1921, against the appellants A. C. Rick and E. B. Webster, and by their original petition sought to cancel and annul, on account of certain fraudulent acts and conduct alleged to have been committed by appellants, the sale of certain corporation stock in the Crescent Loan & Realty Company made to them, respectively and separately, and to recover from appellants the amount so paid therefor, together with certain items of expense in the original petition alleged. The prayer of said original petition was that the sale of said stock be canceled and annulled, that plaintiffs recover judgment against appellants, as defendants, in the sum of $6,000, which was the alleged purchase price of the stock paid by them, respectively, plus certain items of expense referred to in the petition, together with interest and cost.

[1] To this suit appellants, on December 3, 1921, filed a general demurrer and a general denial. The issue was thus joined upon a common-law action of cancellation and rescission of sale and recovery of the price paid, and by said answer the misjoinder of parties plaintiff was waived.

On October 20, 1922, appellee Torti, joined by his coplaintiffs in said suit, filed their first amended original petition seeking to recover of the appellants actual and exemplary damages, basing their action upon an affirmance of the stock sale and the recovery of statutory damages, actual and exemplary, as provided for in articles 3973a, 3973b, and 3973c, Vernon's Texas Civil and Criminal Statutes, 1922 Supp., as enacted by the 36th Legislature, ch. 43. To this amended petition appellants, on December 5, 1922, filed their first amended original answer, containing plea in abatement and special exceptions addressed to said amended petition on the ground that same presented a new cause of action and that there was a misjoinder of parties plaintiff thereto. Thereafter a severance was had by the plaintiffs of their respective causes of action, and the appellee Torti, on January 22, 1923, filed his second amended original petition presenting separately his cause of action alleging a tender of the stock purchased by him upon discovery of the alleged fraud in the same, and the refusal of appellants to pay him his damages, and prayed as upon an affirmance of the sale for actual damages in the sum of $1,000 paid by him for the stock, and $2,000 exemplary damages.

The appellants, to the second amended petition of appellee Torti, filed their second amended original answer, in which they specially pleaded—

"That the plaintiff is estopped from maintaining this suit for damages in so far as same is based upon the fraud statute or for alleged actionable fraud, because the plaintiff, with full knowledge of all the facts, made his election of remedies upon the transaction alleged by him and elected to sue for damages based upon the cancellation and rescission of said alleged stock

purchased by him, and to recover his damages thereunder in this suit by his petition filed therein on September 14, 1921."

Special issues were submitted by the court to and answered by the jury as follows:

"(1) Did the defendant A. C. Rick make a false representation of a past or existing material fact to plaintiff P. A. Torti, or false promise to do some act in the future which was made as a material inducement to said plaintiff to enter into the contract and purchase of stock in the Crescent Loan & Realty Company, and but for which promise the said plaintiff would not have entered into said contract? Answer: Yes.

"(2) Did the defendant E. B. Webster make a false representation of a past or existing material fact to plaintiff P. A. Torti, or false promise to do some act in the future which was made as a material inducement to said plaintiff to enter into the contract and purchase of stock in the Crescent Loan & Realty Company, and but for which promise the said plaintiff would not have entered into said contract? Answer: Yes.

"(3) What was the actual value of the 250 shares of stock in the Crescent Loan & Realty Company purchased by plaintiff, in the condition it was delivered at the time of the contract and purchase of same? Answer: No value.

"(4) Did the defendant A. C. Rick knowingly and willfully make such false representations or promises to the plaintiff, if any, or knowingly take the advantage of said fraud, if any? Answer: Yes.

"(5) Did the defendant E. B. Webster knowingly and willfully make such false representations or promises to the plaintiff, if any, or knowingly take the advantage of said fraud, if any? Answer· Yes.

"(6) What amount of exemplary damages do you assess and allow herein in favor of the plaintiff against such defendants? Answer: $2,000."

Also the following, at the request of appellants:

"(1) Did the defendants Rick and Webster, both or either of them, represent to the plaintiff Torti, at or before his purchase of stock alleged, that the Crescent Loan & Realty Company owned on July 1, 1921, assets in the amount shown in the financial statement of said company, of date June 30, 1921, in evidence before you? Answer: Yes.

"(2) Did the Crescent Loan & Realty Company on July 1, 1921, own assets in the amount shown in the financial statement of said company, of date June 30, 1921, in evidence before you? Answer: Yes.

"(3) Did the Crescent Loan & Realty Company, at the time of the purchase of stock in said company by the plaintiff Torti, own assets in substantially the amount shown in the financial statement of date June 30, 1921, in evidence before you? Answer: No.

"(4) Did Rick and Webster, both or either of them, in substance represent or state to the plaintiff Torti, at or before the purchase by him of the stock alleged, that a settlement had been agreed upon between Rick and Webster and that the amount of the notes and real estate commissions earned by said company in the amount as shown in the trial balance of said Crescent Loan & Realty Company, of date June 30, 1921, were to be transferred to said Rick and would not pass to stock purchasers in said company? Answer: No."

"(9a) Did the defendants, both or either of them, represent or state to Torti that the assets of the Rick, Webster Company would be transferred to the Crescent Loan & Realty Company? Answer: Yes.

"(10) What false representation, or representations, of a past or existing material fact, if any, was there made by the defendant A. C. Rick that induced Torti (if it did) to purchase the stock in question? Answer: Defendants represented to Torti that all assets shown on statement of June 30th were the property of the Crescent Loan & Realty Company on July 16, 1921. That all furniture and fixtures were free of incumbrance. That the advertising was a valuable asset, also telephone No. X2018. That he (Torti) would be given position of secretary-treasurer at a salary of $200 per month. That contracts and notes already made in the name of Crescent Loan & Realty Company would bring in an income of $700 or $800 per month for several months to come."

"(12) Did the defendant E. B. Webster promise to make plaintiff Torti secretary and treasurer of the Crescent Loan & Realty Company, as an inducement for him to purchase stock in said company? Answer: Yes.

"(13) Did the defendant A. C. Rick promise to make plaintiff Torti secretary and treasurer of the Crescent Loan & Realty Company, as an inducement for him to purchase stock in said company? Answer: Yes."

The trial court, under the findings of the jury on such special issues, rendered judgment for $1,000 actual damages and $2,000 exemplary damages against the appellants, from which judgment this appeal is prosecuted.

We find the facts as reflected by the answers of the jury to the special issues submitted not only sustained but warranted by the evidence, and said answers are here adopted as our findings of fact.

Appellants, by their first, second, third, and fourth propositions, assail the proceedings had on appellee's second amended original petition and the judgment rendered thereon, on the ground that—

"Appellee Torti, having sued with others the appellants as defendants in the original petition filed September 14, 1921, with full knowledge of all the facts, for rescission and cancellation of the alleged stock sale to him, upon which issue was joined under the answer of such defendants, thereby elected his remedy of rescission and cancellation and restricted his recovery to judgment for the purchase price paid by him, and was precluded and estopped by such election of remedy from affirming the sale under his second amended original petition filed January 22, 1923, and under such affirmance to recover actual and exemplary damages for actionable fraud, either at common law or under the statute of frauds."

[2] The suit as originally filed against appellants by appellee and his then coplaintiffs

was one for rescission of the alleged contract of sale of the stock by appellants to appellee and his coplaintiffs. The suit thus brought was not prosecuted to judgment, and no advantage was obtained by the plaintiffs or disadvantage suffered by the appellants by virtue of the cause of action as set out for rescission of said contract. The suit to rescind did not in any respect have the effect to waive the alleged fraudulent conduct upon which such rescission was sought, or to in any respect affirm the contract for the purchase of said stock, which would have been the result if said suit had been to recover actual and exemplary damages for actionable fraud, either at common law or under articles 3973a, 3973b, and 3973c of the statute of frauds, supra. Therefore, as resorted to, the remedies were not inconsistent, for it was only on the coming in of the amended petition for the recovery of damages, actual and exemplary, on account of the alleged fraud through which the contract of purchase of said stock was consummated, was the right to rescind precluded by reason of the affirmance of the contract through the filing of suit for damages. The rights of the parties, in so far as affirmance of the contract was concerned, remained the same on the filing of the suit for rescission; the appellee being left free to abandon that form of action and to proceed to institute, on the same state of facts, his cause of action sounding in damages on account of the alleged fraud practiced upon him, said cause of action for rescission not having been prosecuted to judgment or any advantage thereby accrued to appellee or any disadvantage thereby suffered on the part of appellants.

[3] As pursued, the remedies resorted to by appellee are not inconsistent, but are alternative and concurrent, and, applying the following well-recognized rule of law, the doctrine of election of remedies urged by appellants has no application to the instant facts. "In that class of cases in which the remedies are not inconsistent but are alternative and concurrent, there is no election until one of them has been prosecuted to judgment, unless the plaintiff has gained an advantage or the defendant has suffered a disadvantage."

In the case at bar both remedies in question were based upon the sale of certain stock in the corporation and the fraudulent representations made as inducement for such sale. It is not a case here of an attempt on the part of appellee to change his cause of action from one based on contract to one based on tort, or vice versa. The two remedies are therefore not inconsistent, as would be in the last-mentioned cases, but are simply alternative and concurrent. There can be no question in the present case that appellee, as plaintiff in the original suit, gained nothing, and the appellants, as defendants therein, lost nothing, by reason of the change by appellee in the remedies to recover his damages.

[4] However, assuming that the remedies of rescission and for damages under the statute of frauds are such inconsistent remedies, yet the doctrine of election as contended for by appellants will not apply, because it is well settled in this state that the mere commencement of an action which is not prosecuted to final judgment does not constitute an election, and a party may, at any time before final judgment, dismiss his suit and proceed upon his other inconsistent remedy. The above rule is amply supported and warranted by the following authorities: Johnson v. First National Bank of Marlin (Tex. Civ. App.) 198 S. W. 990. In that case the vendors of certain land had sued upon their vendors' lien notes. This action was dismissed and a suit filed for title and recovery of the land. The vendees contended that by filing suit upon the notes, the vendors had elected to treat the sale, which was executory upon its face, as executed and to rely upon the recovery of the debt as evidenced by the notes. The court held that the more reasonable rule is that the mere bringing of an action which has been dismissed before judgment, and in which no element of estoppel in pais has arisen, that is, where no advantage has been gained and no detriment has been occasioned, is not an election. Lewis v. Powell (Tex. Civ. App.) 205 S. W. 737, in which the above rule is reaffirmed.

This court, in the case of Hartford Life Ins. Co. v. Patterson, 231 S. W. 814, in discussing the question of election, said:

"Besides, since there is conflict of authority in the application of this doctrine, conceding the original petition and the amended petition to assert inconsistent rights, we choose to follow those authorities which seem to hold that the mere institution of a proceeding is not such a conclusive election as will prevent the plaintiff from abandoning it and pursuing an inconsistent remedy."

To the same effect is the holding of the following cases: Stone Land & Cattle Co. v. Boon, 73 Tex. 548, 11 S. W. 544; Brodkey v. Lesser (Tex. Civ. App.) 157 S. W. 457; Wright v. Chandler (Tex. Civ. App.) 173 S. W. 1175; 9 R. C. L. 957, § 5; Id., pp. 961–966; Cohoon v. Fisher, 146 Ind. 583, 44 N. E. 664, 45 N. E. 787, 36 L. R. A. 193; Register v. Carmichael, 169 Ala. 588, 53 So. 799, 34 L. R. A. (N. S.) 309, and notes; Immigration Co. v. Karlan (Tex. Civ. App.) 245 S. W. 1043.

[5] Notwithstanding some of the strong expressions found in authorities cited above, we are persuaded to state that the rule does hold that where the remedies are inconsistent and the complaining party commences a suit for damages resulting from fraud, he thereby ratifies the contract, and therefore is precluded from bringing suit for rescis-

sion. This, perforce, of the fact that the bringing of the suit to recover damages is of itself a ratification of the contract involved between the parties. But such is not the question in the present case, as the suit was originally brought for rescission, which was afterwards abandoned and suit instituted by proper amendment for recovery of damages under the articles of the statute of frauds authorizing the bringing of the suit as filed by appellee.

It is apparent that the trial court treated appellee's second amended original petition, on which this cause was tried, as containing a declaration upon two separate and distinct causes of action, to wit, one for rescission and one to recover actual and exemplary damages under the statute, supra. Otherwise, the court would not have directed the appellee to elect on which cause of action he would rely in prosecuting his suit to a final conclusion.

[6, 7] Although we have carefully examined said amended petition and find same quite voluminous in detailing minutely the transactions involved in the litigation, and on which no doubt said two distinct causes of action could have been predicated, we are not able to deduce from said petition the allegations of two separate causes of action. This, largely in view of the affirmative prayer for relief; same being specifically for actual and exemplary damages, which should not be controlled by the provision contained in the prayer, to wit, "For such other relief, special and general, in law and in equity, to which he may be justly entitled," to the end that the petition may be made thereby to appear to allege two inconsistent causes of action. However, conceding that said petition alleges two inconsistent causes of action, that could be of no avail to appellants on this appeal, as the record shows that no judgment was taken and no advantage secured by the appellee, and that no disadvantage was suffered by the appellants on appellee's cause of action based upon his suit for rescission of the contract; but, on the contrary, that when appellants submitted their plea of election, appellee did elect his statutory remedy and completely abandoned his suit for rescission of contract. Gustafson v. American Land Co. (Tex. Civ. App.) 234 S. W. 244; 9 R. C. L. 964, § 11, and authorities cited.

We therefore overrule appellants' propositions Nos. 1, 2, 3, and 4.

In connection with and explanatory of the special issues submitted, the trial court instructed the jury as to the law of the case as follows:

"You are instructed, in connection with the above issues Nos. 1 and 2, that actionable fraud in this state, with regard to transactions in real estate or in stock in corporations or joint-stock companies, shall consist of either a false representation of a past or existing material fact; or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract, and but for which promise said party would not have entered into said contract, provided, however, that whenever a promise thus made has not been complied with by the party making it within reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy, or by some equitable reason.

"You are also instructed, in connection with the above issues Nos. 1 and 2, that it was immaterial whether the defendants knew that they were making false representations if the plaintiff believed the representations to be true, relied on them, and closed the transaction on the faith thereof, and it is no defense that had inquiry and investigation been made that the falsity of the representation would have been discovered; and further it is immaterial whether or not the party participating in the fraud, if any, was benefited or shared in the profits. * * *

"In answering the above (issue No. 3), you will take into consideration the value of the furniture, fixtures, lease, and other property owned by the Crescent Loan & Realty Company at the time of the sale to Torti.

"You are instructed, in this connection, that all persons guilty of fraud as above defined shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract.

"You are instructed, in connection with this issue, No. 6, as well as issues Nos. 4 and 5, above, that all persons making the false representations or promises, and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons knowingly and willfully making such false representations or promises, or knowingly taking the advantage of said fraud, shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered."

Many propositions are presented by appellants challenging probably in every conceivable respect the correctness of the above instructions. While we have considered all the propositions, we deem it only necessary to discuss those presenting the strongest attack in support of appellants' contention, viz.:

"(a) Because same failed to affirmatively submit to the jury the issue of what past or material fact was falsely represented which was made as a material inducement to the appellee to enter into the contract.

"(b) Because same did not submit to the jury the issue as to whether the appellee believed to be true such false representations referred to in said special issues Nos. 1 and 2.

"(c) And whether the false representations

.referred to, if any were made, were believed to be true by and relied upon by appellee as a material inducement to him in purchasing the stock in question.

"(d) That same did not affirmatively submit to the jury what false promise, if any, was referred to in special issues Nos. 1 and 2.

"(e) And whether the appellee believed to be true such false promises referred to in said special issues Nos. 1 and 2.

"(f) That said charge does not correctly define 'fraud' to the jury.

"(g) That same did not submit an issue requiring a finding by the jury that any false representation found to have been made by the appellants, or either of them, or any false promise made by them, or either of them, was a material inducement to the appellee in making such stock purchase.

"(h) That said charge seeks to reflect the fraud statutes, articles 3973a, 3973b, and 3973c of the Texas Statutes, which are unconstitutional and void."

Appellee's suit is based upon article 3973a, supra, which, in part, reads as follows:

"Actionable fraud in this state with regard to transactions in real estate or in stock in corporations or joint-stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract."

This article is section 1 of the act of the Thirty-Sixth Legislature, chapter 43. The remaining sections of said act, 2 and 3, respectively, have to do with the right of the injured party to recover actual and exemplary damages.

[8, 9] Appellee's cause of action being based upon the above act, it was proper that said charge should reflect the provisions of the law as contained in said articles 3973a, 3973b, and 3973c, supra. Therefore it was not incumbent upon the court to have submitted to the jury the issue as to what past or material fact was falsely represented, which was made as a material inducement to the appellee to enter into the contract. However, conceding that the issue should have been submitted, the fact that the court, at the request of appellants, submitted such issue to the jury, supplied the omission and removed the objection urged by appellants to the charge. The statute under which appellee's suit was brought affords a complete scheme within itself for the relief intended to be provided by its terms for those wronged through the acts and conduct denounced by said legislative enactment. Therefore it was not incumbent upon the court in its instructions to have submitted to the jury the issue as to whether the appellee believed to be true the false representations alleged to have been made by appellants, further than the wording and definition as given and defined by the statute of frauds itself. And especially is this true in view of the fact that in the charge as given is included a full and complete definition as to what constitutes such fraud, if any, and includes in such definition the fact that the appellee must have relied upon such false representations alleged to have been made by appellants, or either of them, in the purchase of said corporation stock by appellee from appellants.

[10] In order for appellee to prevail in his action for damages for fraud against appellants, it was not incumbent upon him to establish that appellants knew they were making false representations; it being sufficient, if the appellee believed the representations made by appellants to him to be true, that same were false, that he relied upon them, and closed the transaction on the faith thereof. This is a reasonable and meritorious rule of law, which should at all times be given effect by the courts in order to encourage and promote the utmost good faith in transactions between parties, and to furnish a means of relief in behalf of those overreached in transactions without any fault on their part through act, word, or conduct of another contracting party, whereby the injured party was induced to act in a way he otherwise would not have done but for some false or fraudulent statement, whether willfully made or made without the knowledge of its truth or falsity. Wortman v. Young (Tex. Civ. App.) 221 S. W. 660.

Acting, not only within its power and authority, but within its wisdom, the Legislature saw fit by proper act to define "actionable fraud" in this state with regard to transactions in real estate or in stock corporations or joint-stock companies, as stated in article 3973a, supra, and it is not for the courts, by construction, to take from or add to the provisions of said act, but to enforce same according to its plain and unmistakable meaning, and this the trial court did in its instructions, which, in view of the many criticisms so ably presented by counsel for appellants, we have carefully considered.

[11] It will be noted that the charge of the court and the wording of the special issues and the special charges submitted to the jury are an exact duplication of the statute under which appellee's suit was brought. Therefore, if the statute is the law, and of which in our opinion there can be no doubt, then the charges of the court and the special issues submitted are entirely proper and in accordance with the law. The definitions given are copied from the definitions given by the statute under which appellee's suit was brought, except in the instances hereinafter noted, to wit, in the matter of the special charges submitted in connection with special issues Nos. 1 and 2, and the following cases confirm such to be the law: Labbe v. Corbett, 69 Tex. 509, 6 S. W. 811; Gustafson v. Land Co., supra, par. 12; McDonald

v. Lastinger (Tex. Civ. App.) 214 S. W. 829, pars. 1, 2, and 3; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660, par. 2; Sanger Bros. v. Barrett (Tex. Civ. App.) 221 S. W. 1087, par. 5; Philpott v. Edge (Tex. Civ. App.) 224 S. W. 263, pars. 1 and 2; Immigration Co. v. Karlan, supra, pars. 1 and 2; Graves v. Haynes (Tex. Com. App.) 231 S. W. 383.

In the last case cited above the court held:

"The fact that seller of cattle may have believed them safe, sound, and free from tick fever, was unimportant, if in fact the buyer believed seller's representations to that effect to be true and relied upon them in purchasing the cattle. A buyer of cattle was under no duty to investigate the truth or falsity of seller's representations that the cattle were safe, sound, and free from tick fever."

Complaint is made that no special instruction of fraudulent conduct was submitted in issues Nos. 1 and 2. Even if this omission had in fact been made, we do not believe that same would have been error. However, conceding that same would have been, this omission was corrected by special issue submitted at the request of appellants calling for the jury to find as to special acts of fraudulent conduct, which issue was given by the court and found by the jury adversely to appellants.

Not finding the instructions subject to the criticisms advanced by appellants, all assignments and propositions challenging the correctness of the instructions are overruled.

[12] Appellants contend that the court erred in admitting in evidence in behalf of appellee, over their objection, the testimony of J. C. Aldridge, C. E. Farrell, and H. B. Northcutt, touching individual transactions and separate purchases of stock in said company from appellants, induced by similar advertisements and similar misrepresentations by appellants as alleged by appellee in his petition as inducing his purchase, and to testify as to what was said to them, respectively, by the appellants inducing their respective purchases of stock from appellants, and to detail individual transactions by them, respectively, with appellants in such stock purchase tending to show a fraud upon them in such transactions; and likewise erred in admitting the testimony to like effect of Mrs. Ellis as tending to show a fraud by the appellants on F. A. Ellis in his purchase of stock, on the ground that all of said testimony was res inter alios acta.

We have carefully examined the testimony of said witnesses, and find that the testimony of each was in reference to a similar transaction had with appellants; in fact, involving similar acts and conduct, taking place at the same time and involving the same character of fraud. An examination of the evidence of said witnesses revealed that all of the transactions complained of in such evidence, including that of appellee herein, show that the fraud committed was of a similar character, and, further, that all transpired and took place within one week's time, interlocking with each other as to such time.

One of the material inquiries involved in the suit instituted by appellee was the intent on the part of appellants, in making the representations as alleged by appellee to him in the transaction involving the purchase of the corporate stock through appellants. From the very reason of things, appellee could only have recourse to the outward manifestations of the condition of the mind of appellants; the outward manifestation being not only their acts, words, and conduct with appellee, but their words, acts, and conduct with other parties in reference to a similar transaction occurring at or about the same time. Otherwise, appellee would forever remain a stranger, and the courts with him, as to the intent in fact actuating the conduct of appellants. The ruling of the court in admitting the evidence was in keeping with the following settled rule, not only in Texas, but other jurisdictions, viz.: That, when fraudulent intent is charged as to a particular transaction, it is permissible to prove that the litigant charged with such wrongful intent was guilty of similar acts and conduct at or about the same time. Posey v. Hanson (Tex. Civ. App.) 196 S. W. 731; Moorman et al. v. Small (Tex. Civ. App.) 220 S. W. 127; Wortman v. Young, supra.

Said evidence having been properly admitted and limited by instructions to the jury to only consider same as evidence upon the question of intent, said proposition is overruled.

Finding no reversible error in the proceedings had, as reflected by the record before us, the judgment of the court below is in all things affirmed.

Affirmed.